IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 15-4766

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

MELVIN SALEE LYNCH,

*Defendant - Appellant.*

———————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Frank D. Whitney, Chief Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Jill Westmoreland Rose              Anthony J. Enright
United States Attorney              Assistant United States Attorney
                                    227 West Trade Street
                                    Carillon Building, Suite 1650
                                    Charlotte, North Carolina   28202
                                    (704) 344-6222

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................................iii

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED ...............................................................................1

STATEMENT OF THE FACTS ................................................................2

    A. Lynch repeatedly violates the terms of his supervised release,
    and the court, with Lynch's consent, modifies those terms........2

    B. The district court revokes Lynch's supervised release after
    he violates the condition requiring him to submit to a
    residential re-entry center and adhere to its rules.....................5

SUMMARY OF THE ARGUMENT ........................................................13

ARGUMENT

I.    Lynch's challenge to the district court's June 25, 2015,
    modification order, to which Lynch consented, is untimely
    and waived.......................................................................................14

       A.   Standard of Review .....................................................14

       B.   Discussion.....................................................................15

II.  The district court acted well within its discretion when it revoked Lynch's supervised release after finding that the McLeod Center required him to seek employment and he refused ........................................................................... 20

   A.  Standard of Review ....................................................... 20

   B.  Discussion.................................................................... 21

CONCLUSION ........................................................................ 25

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
      ORAL ARGUMENT ............................................................. 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Kontrick v. Ryan,*
    540 U.S. 443 (2004)................................................................17

*Kotteakos v. United States,*
    328 U.S. 750 (1946)................................................................21

*Puckett v. United States,*
    556 U.S. 129 (2009)................................................................15

*United States v. Bostic,*
    No. 94-5441, 1995 WL 82502 (4th Cir. 1995)....................................20

*United States v. Burkhalter,*
    588 F.2d 604 (8th Cir. 1978)................................................18

*United States v. Carthorne,*
    726 F.3d 503 (4th Cir. 2013)................................................20

*United States v. Chestnut,*
    616 F. App'x 642 (4th Cir. 2015) ........................................14

*United States v. Christi,*
    682 F.3d 138 (1st Cir. 2012) ..............................................18

*United States v. Doswell,*
    670 F.3d 526 (4th Cir. 2012)................................................20

*United States v. Ferguson,*
    752 F.3d 613 (4th Cir. 2014)................................................21

*United States v. Johnson,*
    980 F.2d 1212 (8th Cir. 1992)..............................................16

*United States v. Lilly,*
    206 F.3d 756 (7th Cir. 2000)................................................16

iii

*United States v. Lonjose,*
    663 F.3d 1292 (10th Cir. 2011)...........................................................16

*United States v. Massenburg,*
    564 F.3d 337 (4th Cir. 2009)..............................................................14

*United States v. Maxwell,*
    285 F.3d 336 (4th Cir. 2002)..............................................................20

*United States v. McGraw,*
    No. 15-1460, 2015 WL 6161780 (6th Cir. Oct. 20, 2015) ...................19

*United States v. Melton,*
    666 F.3d 513 (8th Cir. 2012)..............................................................19

*United States v. Olano,*
    507 U.S. 725 (1993)...........................................................................15

*United States v. Padgett,*
    788 F.3d 370 (4th Cir. 2015)..............................................................20

*United States v. Robinson,*
    744 F.3d 293 (4th Cir. 2014).........................................................14, 17

*United States v. Williams,*
    179 F. App'x 891 (4th Cir. 2006) .......................................................16

*United States v. Williams,*
    401 F. App'x 776 (4th Cir. 2010) .........................................................3

*Wood v. Milyard,*
    132 S. Ct. 1826 (2012)........................................................................17

**Statutes**

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3583(f) ........................................................................... 15

28 U.S.C. § 1291 ................................................................................ 1

**Rules**

Fed. R. App. P. 4(b)(1)(A)(i) ........................................................ 16

Fed. R. Evid. 801(c)(2) ................................................................... 24

Fed. R. Evid. 801(d)(2)(A) ............................................................ 24

v

## JURISDICTIONAL STATEMENT

Melvin Salee Lynch challenges a June 25, 2015, order of the district court (Hon. Frank D. Whitney, J.) modifying the terms of his supervised release and a December 2, 2015, order by that court revoking his supervised release.   The district court's jurisdiction was conferred by 18 U.S.C. § 3231.   On December 8, 2015, Lynch filed a notice of appeal, J.A. 191, which was timely with respect to the court's December 2 order but untimely with respect to the court's June 25 order.   A statute, 28 U.S.C. § 1291, confers jurisdiction on this Court.

## ISSUES PRESENTED

I.   Whether Lynch is entitled to reversal of an order to which he consented modifying the terms of his supervised release in an appeal filed nearly six months after the order was entered.

II.   Whether the district court properly revoked Lynch's supervised release for violating a condition requiring him to submit to a facility for a work-release program, where the director of that facility testified, based on her personal knowledge, that Lynch refused to follow the facility's rule requiring him to seek employment.

## STATEMENT OF THE FACTS

### A. Lynch repeatedly violates the terms of his supervised release, and the court, with Lynch's consent, modifies those terms.

Lynch received a sentence of 97 months of imprisonment and 36 months of supervised release after he pleaded guilty in the Western District of North Carolina to possession of a firearm by a convicted felon and possession of a firearm during and in relation to a drug-trafficking offense.   J.A. 15–17.   He began serving his supervised-release term in November of 2013.

Lynch violated the conditions of his supervised release on several occasions.   He submitted a positive drug test for marijuana in September of 2014.   J.A. 20.   Later that month, he missed another drug test.   J.A. 20.   After those violations, Lynch expressly agreed to a modification of the terms of his supervised release, which required him to participate in the "DROPS program," a program for "Drug Reduction on Probation and Supervised Release" that allows an individual to "be incrementally imprisoned, beginning with two days after the first positive test for drug use, five days after the second use, ten days after

2

the third use, and so on." *See United States v. Williams*, 401 F. App'x 776, 777 (4th Cir. 2010); J.A. 22.

After the terms of Lynch's supervised release were modified with his consent, Lynch continued to violate them.    In December of 2014, Lynch tested positive for cocaine use.    J.A. 38.    That same month, he violated the requirement that he report any change in his residence when he moved out of his residence and failed to provide another address to the probation officer.    J.A. 23.    He also informed his probation officer that he "no longer wanted to comply with his supervised release and that he wanted to finish his time in the Bureau of Prisons."    J.A. 39; *see also* J.A. 44.    Under the DROPS Program term of his supervised release, Lynch was required to report to the Mecklenburg County Jail on January 15, 2015, for two days of confinement, because of his positive cocaine test.    J.A. 38.    Lynch failed to report as required.    J.A. 38.

Lynch admitted violating the terms of his supervised release during a revocation hearing conducted by the district court on June 25, 2015.    J.A. 42–43.    He admitted failing to report his change in residence and violating the requirement of the DROPS Program.    J.A.

42.   The probation office had recommended that Lynch's supervised release be revoked and that he receive a 12-month prison sentence, J.A. 39, at the top end of the range advised by the Sentencing Commission's policy statement, J.A. 42.   Lynch asked the court to "adopt the probation office's recommendation" and stated, "it appears to be reasonable."   J.A. 45–46.   The United States, however, recommended that Lynch instead be ordered to serve six months of his supervised release in a "halfway house," which would be imposed as a special condition of supervised release instead of as a sentence upon revocation.   J.A. 46.   Lynch had been arrested and detained for his violation of supervised release, and the United States recommended that he remain in custody until a bed became available for him at the "McLeod Center," J.A. 51, 52, a residential re-entry center, J.A. 132.   Lynch, through counsel, agreed that the United States's recommendation "was reasonable."   J.A. 52.

In the light of Lynch's violations, the court ordered the modification to the terms of supervised release to which Lynch had agreed:   Lynch would be required to spend six months of his term of supervised release in a halfway house designated by the probation office.   J.A. 54.   The

4

day of the hearing, the court entered a written order modifying the conditions of Lynch's supervised release.   J.A. 56.   The order stated, "The defendant shall submit to the local Residential Reentry Center for a period of not more than six (6) months, with work release, at the direction of the U.S. Probation Officer.   The defendant shall abide by all of the rules and regulations established by the facility until released." J.A. 56.

Lynch did not appeal the order, move for reconsideration, or otherwise challenge the district court's modification of his supervised release.   On August 26 the court amended its order, specifying, consistently with what the parties had previously agreed, J.A. 51–53, that Lynch "remain in custody until such time that space becomes available for his Residential Re-Entry."   J.A. 59.

**B.    The district court revokes Lynch's supervised release after he violates the condition requiring him to submit to a residential re-entry center and adhere to its rules.**

Lynch was admitted to the McLeod Residential Re-Entry Center on August 20, 2015, J.A. 114–15, 158, and discharged 11 days later for failing to comply with the rules of the facility, J.A. 61, 112, 122, 143.

5

The district court's probation office filed a petition recommending that the court revoke Lynch's supervised release, alleging that he violated the condition the court had imposed on June 25.   J.A. 61–62.   The court conducted a revocation hearing over the course of two days in November 2015, during which Lynch admitted that he had been discharged from the McLeod center but contested the violation.   J.A. 110, 112, 129.   The court continued the hearing to the second day to permit the United States to subpoena an additional witness.   J.A. 125.   The United States explained that it had not subpoenaed that witness to appear on the first day because it had understood, in the light of correspondence from defense counsel, that Lynch was not going to contest the violation.   J.A. 127.

During Lynch's November 2015 supervised-release revocation hearing, the district court heard testimony from Lynch's probation officer, J.A. 113–25, 151–60, and Louise Ferrell, the director of the McLeod Center, who had met with Lynch on multiple occasions and had personally made the decision to discharge Lynch, J.A. 133, 138.   Lynch's probation officer testified that, during Lynch's brief stay at the Center,

she had received multiple telephone calls from Ferrell about Lynch's behavior and, in turn, spoke to Lynch about the calls.   J.A. 115.   The officer told Lynch that "he was there by court order, and that he needed to comply with the rules and regulations of the facility to avoid violation of his supervision."   J.A. 117.   Lynch complained about his experience at the facility and asserted that his rights were being violated, but he informed his probation officer that he would improve his behavior.   J.A. 120–22.

Ferrell testified that the McLeod Center was a "work release center" utilized by the Federal Bureau of Prisons and the probation office, which provided assistance to individuals who were subject to supervision and individuals who did not have a residence.   J.A. 132. She explained that the Center's "interest was trying to help [Lynch] find employment," and that she had discussed with him the services that would help him do so.   J.A. 134.   Ferrell testified that the Center's program required individuals to "look for employment every day."   J.A. 136.

7

She explained that the Center utilized the employment services of organizations in the community, such as Goodwill.   J.A. 134, 146, 150. Job coaches that Goodwill offered were ordinarily the first point of contact for individuals seeking employment with the Center's help.   J.A. 146.   Ferrell testified that she and others at the Center relayed to Lynch on numerous occasions that they sought to help him find employment and discussed the services available.   J.A. 134–35.   Lynch, however, was often "almost nonresponsive" during conversations with Ferrell. J.A. 136.   She testified that Lynch would become angry quickly and "sort of blow up."   J.A. 136.

Ferrell testified that she made the decision to discharge Lynch for noncompliance with the rules and regulations of the McLeod Center because Lynch "wasn't willing to go look for a job, and it's a work release center."   J.A. 140–41.   She testified about the steps she expected him to take toward finding a job, with guidance from the Center, and she explained that Lynch was unwilling to follow them.   J.A. 140, 146, 150. Ferrell explained that Lynch had been disruptive at the facility and had violated other rules, J.A. 136–37, but she said that she probably would

have tolerated Lynch's behavior if he had been willing to comply with the Center's requirement that he look for a job, J.A. 140.

Ferrell testified that Lynch had repeatedly insisted that he was not supposed to be at the Center and "needed to get out." J.A. 134. On cross examination, Ferrell testified that Lynch had sought to leave the facility for "many different reasons." J.A. 142. Ferrell testified that Lynch sought to obtain a car. J.A. 141–42. She explained that she did not feel comfortable allowing him to leave the facility and that doing so would not have been permitted by Bureau of Prisons guidelines, so she offered to drive him to where he wanted to go and help him obtain the car. J.A. 142. Lynch declined that offer. J.A. 142. Ferrell also testified that Lynch sought to see his attorney. J.A. 142–43. Ferrell informed Lynch that his attorney could come to the Center, but she was not comfortable signing him out to leave the facility. J.A. 143. Ferrell also testified that Lynch had mentioned a job, but she did not recall Lynch's telling her that he had obtained employment at the job or explaining what the job was. J.A. 141, 147.

9

After the witnesses were excused, Lynch's attorney argued that Lynch had complied with the rules of the Center because he had been trying to go to a job that he already had.   J.A. 163.   The court questioned Lynch's attorney about that argument, noting that Ferrell had testified unequivocally that she had personal knowledge that Lynch had been *unwilling* to seek employment.   J.A. 163.   The petition filed by the probation office indicated that Lynch had been "previously employed" at a pizza restaurant, Mellow Mushroom.   J.A. 63.   But the court explained that it would not consider the probation officer's out-of-court statements to undercut Ferrell's testimony because she had not testified about them, and they were "raw hearsay."   167.   And both Lynch's probation officer and Ferrell testified that Lynch had made statements mentioning a job, J.A. 118, 134, 141, but the court informed Lynch's attorney that it considered that testimony to have little probative value toward the fact that Lynch actually had secured employment, J.A. 164.   The court, however, stated that Lynch was welcome to take the stand and testify under oath to establish that he had

a job or to recall the probation officer to testify about what she had written.    J.A. 163–66.

The court offered to continue the hearing, if necessary, to allow Lynch to testify, call Lynch's employer as a witness, or present other evidence to establish that Lynch had complied with the requirement to seek employment.    J.A. 164–66.    Lynch's attorney declined that offer. J.A. 166.    Instead she asked the court to draw the inference that Lynch had obtained a job and was trying to do what employees of the McLeod Center had asked of him from the "bits and pieces of evidence" that had already been introduced.    J.A. 166, 168.    Lynch's attorney also argued that Lynch was confused about whether he had been required to submit to the Center and that Lynch could have believed that no court order imposing that requirement existed, notwithstanding the testimony that both Lynch's probation officer, J.A. 117, and Ferrell, J.A. 136, had told him of that order, J.A. 161–62.

After it heard from both parties and Lynch declined to introduce additional evidence, the court found by a preponderance of the evidence that Lynch had violated the terms of his supervised release.    J.A. 169.

11

The court found that Lynch did not comply "with the rules and regulations of the McLeod Center, which resulted in his being discharged from the McLeod Center."   J.A. 169.   The court expressly found that Ferrell "personally had knowledge that [Lynch] was not attempting to look for employment as required by the McLeod center."   J.A. 169.   The court also rejected Lynch's contention that he was confused about the existence of a court order such that he was not responsible for his violation, but it noted that it could consider whether Lynch had a sincere misunderstanding when imposing a remedy for that violation.   J.A. 170–71.

The court sentenced Lynch to 5 months' imprisonment.   J.A. 182, 188.   The court explained that a ten-month sentence, within the 6–12 month range advised by the Sentencing Commission's Policy Statements, was appropriate in the light of the relevant statutory sentencing factors.   J.A. 179–81.   But the court concluded that it was appropriate to give Lynch credit for the approximately 4.5 months that he had spent in prison awaiting a bed at the McLeod Center, and accordingly selected a sentence of 5 months to reflect that time served.

12

J.A. 181–82.   The court also sentenced Lynch to an additional term of supervised release of 12 months.   J.A. 182.

## SUMMARY OF THE ARGUMENT

I.   Lynch's challenge to the propriety of the district court's June 25, 2015, order modifying the terms of his supervised release is untimely. To challenge that order, Lynch was required to file a notice of appeal within 14 days after the order was entered, and he did not.   He also waived any challenge to the order because it imposed the condition to which he agreed during the hearing.   And Lynch has, in any event, identified no authority demonstrating that the court plainly erred by imposing a common condition requiring Lynch to follow the rules of a residential reentry center for six months.

II.   The district court did not clearly err when it found that Lynch violated the rule of the McLeod Center requiring him to seek employment when he refused to seek employment.   The direct testimony of the director of the McLeod Center, based on her personal knowledge, that she discharged Lynch from the Center because he

13

refused to seek employment in violation of the Center's rule amply supports the court's finding.

## ARGUMENT

**I.    Lynch's challenge to the district court's June 25, 2015, modification order, to which Lynch consented, is untimely and waived.**

### A.    Standard of Review

This Court ordinarily declines to review appealable orders, such as the district court's March 25, 2015, modification order, that are not appealed within the time required by the Federal Rules of Appellate Procedure.  *See United States v. Chestnut*, 616 F. App'x 642, 643 (4th Cir. 2015) (unpublished opinion).   This Court also ordinarily does not review claims that are waived.   *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) ("[W]hen a claim is waived, it is not reviewable on appeal, even for plain error.").

If this court were to consider Lynch's arguments about the validity of the court's June 25 order, they would be subject to the plain-error standard of review because he has raised them for the first time on appeal.   *See United States v. Massenburg*, 564 F.3d 337, 342 n.2 (4th

14

Cir. 2009).   To prevail under that standard, Lynch must show (1) that

an error occurred; (2) that the error was "clear or obvious, rather than

subject to reasonable dispute"; and (3) that the error affected Lynch's

substantial rights, "which in the ordinary case means he must

demonstrate that it 'affected the outcome of the district court

proceedings."   *Puckett v. United States*, 556 U.S. 129, 134 (2009)

(quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).   If Lynch

were able to establish those elements, this Court would have discretion

to consider the error.   But, the Supreme Court instructs, that discretion

"ought to be exercised only if the error 'seriously affects the fairness,

integrity, or public reputation of judicial proceedings.'"   *Id.* (quotation

marks and alterations omitted) (quoting *Olano*, 507 U.S. at 736).

## B.   Discussion

Lynch challenges the district court's June 25, 2015, order

modifying the conditions of Lynch's supervised release.   Br. of Appellant

19–23.   He contends that the order is "legally defective" under 18 U.S.C.

§ 3583(f) because it is not sufficiently specific.   Br. of Appellant 21.

And he contends that it constitutes an impermissible delegation of the

15

judicial power of the United States, which Article III of the Constitution vests with courts.    Br. of Appellant 22.

Lynch's challenge to the court's June 25 modification order is untimely.    That order was appealable subject to Federal Rule of Appellate Procedure 4(b).    *See United States v. Lilly*, 206 F.3d 756, 763 (7th Cir. 2000); *United States v. Williams*, 179 F. App'x 891, 891 (4th Cir. 2006) (unpublished decision); *United States v. Johnson*, 980 F.2d 1212, 1213 (8th Cir. 1992).    Rule 4(b) required Lynch to file his notice of appeal within 14 days after the entry of the judgment or order being appealed, which occurred on June 25.    Fed. R. App. P. 4(b)(1)(A)(i).    He did not.    *See* J.A. 5.    The district court's December 2015 judgment order revoking Lynch's supervised release, J.A. 187, gave rise to "a separate right to appeal."    *United States v. Lonjose*, 663 F.3d 1292, 1300 (10th Cir. 2011).    It did not restart the time for appealing the court's June 25 order, and the United States respectfully requests that this Court dismiss Lynch's untimely challenge to the June 25 order.    *See Williams*, 179 F. App'x at 891.

16

Moreover, even if Lynch's challenge to the June 25 order modifying the conditions of his supervised release were timely, Lynch waived any challenge to the modification by affirmatively consenting to it. "A 'waiver is the intentional relinquishment or abandonment of a known right." *Robinson*, 744 F.3d at 298 (quoting *Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012)). Unlike a forfeiture, which occurs upon "the failure to make the timely assertion of a right," *id.* (quoting *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)), a waiver extinguishes the error, *id.* After the United States proposed that Lynch's supervised-release conditions be modified to require him to stay in a halfway house as a remedy for the multiple violations that Lynch had admitted, Lynch's attorney discussed the details of that requirement with the court, J.A. 48–52. The court explicitly asked Lynch to respond to the United States's proposal, which included Lynch remaining in prison until space was available for him at the McLeod Center, and Lynch affirmatively agreed that it was reasonable. J.A. 52–53. The conduct of Lynch's attorney "passed beyond inadvertence or passivity to the point of

waiver." *United States v. Christi*, 682 F.3d 138, 142 (1st Cir. 2012) (Souter, J.).

Lynch's contention that the court's written order was different from what was discussed during the June 25 hearing, because it specified not only that Lynch would have to submit to the facility but also that he would have to abide by its rules and regulations, Br. of Appellant 4, is baseless.   The court's oral pronouncement that Lynch would be required to spend "six months in a halfway house designated by the probation office," J.A. 54, necessarily implied that he would be required to follow the rules of that facility.   J.A. 54.   No reasonable person would understand court's oral pronouncement to have required Lynch to stay at the facility while permitting him to ignore its rules.   *See United States v. Burkhalter*, 588 F.2d 604, 606 (8th Cir. 1978) (probation order requiring defendant to reside at halfway house "must be reasonably construed to require obedience to the rules and regulations of the house").   Lynch's failure to challenge the written order before the district court underscores its consonance with what the parties had agreed to before the court.

18

Lynch's contention that he never received a copy of the court's June 25 written modification order, *see* Br. of Appellant 7, is similarly misplaced.    Lynch was represented, at the time the order was entered, by counsel, *see* J.A. 1, 4–6, who was required to participate in the district court's electronic-filing system, *see* Administrative Procedures Governing Filing and Service by Electronic Means § I.B.1 (W.D.N.C. 2012)[1].    The court's modification order bears an electronic stamp applied by that system, which demonstrates that it was served on Lynch's attorney.    *See id.* § 2.B.2; J.A. 57.

Even if Lynch's challenge to the court's modification order were timely and not waived, the district court did not plainly err by entering it.    The order is not insufficiently specific.    Nor does it impermissibly delegate an Article III function.    Orders requiring that defendants on supervised release follow the "rules and regulations" of entities like the McLeod Center are common.    *See, e.g.*, *United States v. McGraw*, No. 15-1460, 2015 WL 6161780, at *1 (6th Cir. Oct. 20, 2015) (unpublished decision); *United States v. Melton*, 666 F.3d 513, 515 (8th Cir. 2012);

---

[1] *Available at*
http://www.ncwd.uscourts.gov/ECFDocs/ADMINORDER.pdf.

19

*United States v. Bostic*, No. 94-5441, 1995 WL 82502, at *1 (4th Cir. 1995) (unpublished decision). Yet Lynch has not identified any authority, let alone controlling precedent from "the Supreme Court or this circuit" establishing that the district court's June 25 order was erroneous, as required to demonstrate plain error in all but the "exceedingly rare" appeal. *United States v. Carthorne*, 726 F.3d 503, 516 & n.14 (4th Cir. 2013) (quoting *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002)).

## II.  The district court acted well within its discretion when it revoked Lynch's supervised release after finding that the McLeod Center required him to seek employment and he refused.

### A.    Standard of Review

This Court reviews a district court's decision to revoke a defendant's supervised release for abuse of discretion and its factual findings underlying that decision for clear error. *United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015). This Court reviews a district court's decision to admit evidence during a supervised-release revocation hearing for abuse of discretion. *United States v. Doswell*, 670 F.3d 526, 529 (4th Cir. 2012). The erroneous admission of hearsay evidence at

20

such a hearing is harmless and does not warrant reversal if it "had no 'substantial and injurious effect or influence' on the outcome." *United States v. Ferguson*, 752 F.3d 613, 618 (4th Cir. 2014) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

**B.    Discussion**

1.    <u>The district court did not clearly err when it found in November 2015 that Lynch violated the conditions of his supervised release.</u>

The district court did not clearly err when it found that Lynch violated the conditions of his supervised release. *Cf.* Br. of Appellant 24–28. Those conditions required Lynch to submit to the local Residential Reentry Center. And they required him to abide by all of the rules and regulations of that Center. The director of the center testified unequivocally that the McLeod Center required Lynch to "look for employment every day." J.A. 136. And she testified that she met with Lynch on numerous occasions, that Lynch refused the Center's employment services, and that Lynch was unwilling to look for employment. J.A. 137, 145. The director's direct testimony amply supports the district court's finding.

21

Lynch's contention that he complied with the rules of the McLeod Center because he already had a job, Br. of Appellant 24–25, offers him no assistance.   The court declined to make that finding, and in the light of Ferrell's testimony that Lynch was *unwilling* to seek employment, the court was not required to.   No credible evidence introduced during Lynch's revocation hearing supports, let alone compels, the conclusion either that Lynch had obtained employment or that he had complied with the Center's rules requiring him to seek it.

Lynch's contention that "[i]t is undisputed" that Lynch had told his probation officer that he had a job at Mellow Mushroom, Br. of Appellant 24, misapprehends the record.   The district court explained that it "hadn't heard anything about the Mellow Mushroom" until evidence at the hearing had closed and Lynch had mentioned the probation officer's notes during her argument.   J.A. 167.   The court informed Lynch that it would not consider "raw hearsay" from those notes, but invited Lynch to recall the probation officer to testify about them.   J.A. 166–67. Lynch declined the court's invitation.   J.A. 166–67.

22

Moreover, Lynch's communication with his probation officer does not undercut Ferrell's testimony that she never recalled his telling *her* that he had obtained employment.   J.A. 147.   The conditions of Lynch's supervised release required him to abide by the rules and regulations of the facility.   And the district court was entitled to credit Ferrell's testimony that Lynch was unwilling to seek employment and refused the McLeod Center's employment services.

Lynch's contention that the district court erroneously revoked Lynch's supervised release for failing to comply with "standardless criteria" such as refraining from "creating a conflict," Br. of Appellant 25, is a red herring.   Ferrell testified unequivocally that Lynch was discharged from the McLeod Center for violating the Center's specific rule requiring him to seek employment:   "I discharged him because he wasn't willing to go look for a job, and it's a work-release program."   J.A. 139–40.

Also misplaced is Lynch's contention that Ferrell's testimony was hearsay.   Br. of Appellant 28–29.   Ferrell testified unequivocally that she interacted with Lynch "[q]uite a bit" and had numerous

23

conversations with Lynch.   J.A. 133.   Lynch's own out-of-court statements, of course, are not hearsay because they are admissions by a party opponent to the United States.   Fed. R. Evid. 801(d)(2)(A).

Ferrell testified that Lynch did not comply with the rules and regulations of the McLeod Center, including by refusing to go out and look for employment, "based upon [her] experience with Mr. Lynch." J.A. 136.   Indeed, after Ferrell testified that she discharged Lynch "because he wasn't willing to go look for a job," the court specifically asked her whether that was something she "had personal knowledge of." J.A. 140–41.   Ferrell replied, "Yes."   J.A. 141.

The court explicitly stated that it would not consider any statements that would otherwise be hearsay for "the truth of the matter asserted."   J.A. 139; *see* Fed. R. Evid. 801(c)(2).   And Ferrell's testimony based on her personal knowledge is amply sufficient to support the court's finding that Lynch violated the terms of his supervised release.   This Court, accordingly, should affirm the district court's decision to revoke Lynch's supervised release.

24

## <u>CONCLUSION</u>

For the reasons stated above, the United States respectfully requests that this Court dismiss Lynch's challenge to the district court's June 25 order and affirm the district court's December 2 judgment revoking Lynch's supervised release.

## **REQUEST FOR DECISION ON THE BRIEFS**
## **WITHOUT ORAL ARGUMENT**

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

Respectfully submitted, this 4th day of April, 2016.

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY
s/ Anthony J. Enright
Anthony J. Enright
NY Bar Number # 4485140
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: Anthony.Enright@usdoj.gov

26

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief has been prepared using Microsoft Word 2010, Century Schoolbook, 14 point typeface.

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains _____4545_____ words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

s/ Anthony J. Enright
Assistant United States Attorney
USAO Charlotte, NC

## **CERTIFICATE OF SERVICE**

I certify that I have this day served a copy of the above upon Appellant herein by serving his attorney of record, Peter C. Anderson, through electronic case filing.

This 4th day of April, 2016.

s/ Anthony J. Enright
Assistant United States Attorney
USAO Charlotte, NC